23-62-43. Thank you. And we will hear argument from both sides here. Counsel for Mr. Gonzalez, Ms. Baumgartel, is that correct? All right. You've reserved two minutes for rebuttal. We'll hear from you when you're ready. Thank you, Your Honor. Sarah Baumgartel of the Federal Defenders on behalf of Ronnie Gonzalez, may it please the court. The court should vacate the amended judgment against Mr. Gonzalez for two independent reasons. First, it was imposed by a judge who lacked the lawful authority to impose it. He was sitting in the district court in violation of the temporary designation statute and the equipment clause. How worried should I be about my designation here today? The answer is not worried because the reason that many designations are lawful but this one is not is that the statute requires temporary designations. Why was this not temporary? This particular hearing takes place in 2023, right? Yes. And in 2023, I think according to your papers, there's a one-year designation that's dated January 2023. And there's a new one now, right, for 2024? No. So if you look at the designation orders, they're at 889-390 in the appendix. And so my understanding is there are actually three operative designation orders. With each of them, the first one is entirely open-ended and runs from 2018 until the completion of unpunished business. How is that entirely open-ended? It has an end date that's not a date. It doesn't say January 14, 2036. If it's like completion of unpunished business, that would be too contingent and far off to meet any plausible definition of temporary. In effect, these orders are permitted Judge Sullivan to sit continuously in the district court from 2018 until November. On his cases currently assigned? This is not a newly assigned case, right? So let's just have a yes or no on that first, right? This was not newly assigned to him. This was a case assigned to him as a district judge? The case he previously worked on, that's correct. But what we're saying is that he's not actually limited to taking old matters. It's not just the completion of old matters. It's the completion of what would be characterized as new matters on cases that he previously worked on. Just before we go to Chief Wright-Davis, I want to flag that there was an argument last week on this issue in the United States with John Bradley. So I just want to make it because this case was briefed first, and so that case was not mentioned in our brief. But that case was come up first. Was that Judge Sullivan as well? Yes. Was it Judge Sullivan as well? Yes. Is it fair to say it's on all fours? It's not exactly on all fours, but certainly the designation issue is very, very similar because that is a violation of supervised release hearing. This is a habeas petition. That was a case where he had previously sentenced the defendant on the underlying criminal case, and so that's the same situation here. So it is very close. The difference is that they each have an independent issue. Here the government is saying the standard of review is plain error. The error was raised initially. Would it be prudent for us to wait for that panel with priority to decide it? Would that cause any prejudice to your client is what I'm asking? It would not cause prejudice to my client. Mr. Gonzales has been sentenced to 26 years, and so there's no prejudice to him from waiting. However, I just reiterate our arguments with respect to why this designation is unlawful, which is that it is a unique designation. It's broader in its scope, continuity, and duration than any of the other designations identified by the government. It is not being designated for a particular circuit sitting or for a particular trial. It is a continuous designation that has now spanned six years and continues effectively indefinitely into the future. So I hear you saying it's different than the ones the government has cited. Are you aware? I mean, so the practice, right, is as a district judge, if you have a supervised release violation, a habeas petition, they all come back to you, to the person who did the original sentencing, right? That's sort of the practice in the district, at least in the district. Correct. It's my understanding, based on cases I've seen since I've been here and based on my own experience, that most of us who were district judges, if not all, have similar designations. So when you say it's unique, I'm a little surprised to hear that. I do it. For two years so far, Your Honor, and what I would say is that at the point that it reaches six years, it has ceased to be temporary and has exceeded the bounds of what's permitted by the statute and what's permitted by the Constitution. But isn't there a value? There's a reason that we reassign the habeas, the violation, those cases to the original district judge. And when you become a circuit judge, you go through the process again, but it doesn't undo the fact that you have been nominated and gone through advice and consent of the Senate to be an Article III judge. It would be different going magistrate judge to district judge, right, different process. But we assume that there's value in assigning to the same judge. We must, because we do it as a matter of routine with district judges like Judge Bilardo, who's still a district judge. He would do that as a matter of routine. So there is some value to that, right? As a system, we see some value to that. So there's a lot in Your Honor's comment. One thing I want to say is, Your Honor, is we do it, we do it. I would note that, and we talk about it, you can look at some of our articles that do reviews. The Second Circuit's practice is unique in this. And so this is not a practice that exists in every circuit. And so it is probably worth being a little curious about why other circuits don't do it with such regularity. And the articles identify some concerns about having a judge simultaneously sit on the trial court and the appellate court that reviews that court's decisions. It would naturally lead litigants to be concerned that that individual might have undue influence on their colleagues and that it might undermine the rigor and independence with which their decisions are reviewed. They haven't seen me get reversed recently then, I guess. Your Honor, I just, you know, the government— I understand. I believe in some cases, pulled out some cases where Judge Sullivan has been reversed too. They said they don't hesitate to reverse. We don't know whether people hesitate to reverse. I think perhaps it was very clear. So if Judge Livingston assigned these habeas and other similar cases to Judge Sullivan on a piecemeal basis, in other words, the district court says to her, we've got a case that was Sullivan's, assign him to that, that would be okay? That would be a much closer case if there were individual cases that were assigned to him, yes. But that's just a huge bureaucratic nightmare, right? I mean, that's wasting Judge Livingston's time and Judge Sullivan's time. And what she's done is sort of the same thing, except that she's done it in an efficient way. To return to Judge Merriam's question, my contention that I think is supported by both the statute and the Constitution is that once someone has left the office of district judge, they should not continue to maintain a district court office. I understand that it may make sense to designate a judge back for the orderly transfer of cases, which, in fact, there are many district judges who, if they join the circuit, transfer some number of their cases because they will be busy with their circuit business. And so there may make sense. It may be efficient for there to be a transitional period for the orderly transfer of cases. But once you're six years out, it's no longer efficient for one judge to be maintaining two separate court governments because there are systemic inefficiencies where Judge Sullivan doesn't have an assigned courtroom that he has to find whenever he goes back to the district court. And the time that he spends on his district court cases detracts from the time that he can spend and creates more work for his circuit colleagues, necessitating designating district judges to the circuit. So it is not truly efficient. These are policy considerations that, no doubt, the chief judge considers. This is another great point, and again, I would encourage you to look at— I'm not sure what the point is. Go ahead. Just on the face of the order, I mean, one of our arguments is that the face of the order makes clear that this violates the statute. So the statute requires designations to be made temporarily to hold a district court when it's in the public interest. There is no finding on the face of these orders that it's in the public interest. The statute doesn't say there has to be an express finding or statement of it. It says it has to be in the public interest, right? No, but even when there is not a requirement of an express finding, when judges exercise discretion, they have to do something to make clear that they have not acted in an arbitrary fashion. Here, the orders reference the need for additional judges on the circuit and then assign the judge to the district court. And so if you actually look at the face of the order, as they say, because the circuit needs additional judges, Judge Sullivan is being assigned to the district court. And so on the face of the orders, they reveal an abuse of discretion. The court can review that. So the phrase in the public interest, although it grants a discretionary authority, it is not unfettered discretion. You've conceded, I think, that the chief judge can assign a circuit judge to a district court case on an individual basis. Yes, there is certainly some. But then what is the known end point of that designation? There is none. In other words, it's indeterminate, isn't it? No, it's until that case is finished, until the completion of that case. Okay, but it's indeterminate in the sense that at the beginning you can't determine when it's going to end. That's true. The case is not going to end though. But doesn't that undercut your argument that you're making? So if Judge Sullivan were assigned to this case individually, to the Gonzalez case individually, by Judge Livingston, you'd have the same argument, wouldn't you? That there's no end point. That has to be your argument. To be clear, if Judge Sullivan continued on this case for six, seven, eight years, I would be making the same argument that his designation had exceeded the scope of what was allowed under the statute. No, because, again, cases act. And so in Bradley Kelly and in other cases, the court has said that at the time that sentence is imposed and any post-trial motions are completed, that is the end of the case. And so I would say that a 2255 or a violation of supervised release is a new matter that is not the continuation of a previous case. Well, we know that's not what our law for better or for worse says about a violation of supervised release. There's this whole thing in supervised release that it's about the violation of the trust of the district court. So we absolutely do not treat a violation of supervised release, you don't get a jury, you don't have all the same rights. We don't treat it as a new matter. We treat it as a continuation of the original sentencing, right? So habeas, I think, is a little different. I think that is the difference between this and Bradley. Again, Bradley Kelly, this comes up in the context of a designation where a judge was assigned to a different district, they imposed a sentence, and then later he returned to his district. The parties went back to complying consent for termination of probation, and the Supreme Court held that that had exceeded the scope of the designation because the termination was a new matter. It was not a continuation of the old matter. And so that is our position. And again, this is a 2255. I see I'm past my time. I should briefly talk about the other issue, which is our argument is simply that Mr. Gonzales should not have been subject to the attempted or part of the attempted murder guideline. This was fundamentally a robbery where one of the co-defendants, once he went in to commit the robbery, shot the victim. This was an unplanned, unexpected killing on the part of Mr. Gonzales. He was standing outside the building, did not have a gun, did not sort of orchestrate or mastermind this robbery. And under the court's decision in United States v. Johnson, the court should hold that that was not relevant conduct for purposes of his sentence. That was a significant driver of his guidelines. It took his guidelines up more than two decades. And so we're asking for him to be sentenced for that reason as well. And to be clear, that one's not on plain error. That was fully?  Thank you. And if that were decided favorably to your client, when would he get out? I'm asking whether it's time-sensitive appeal here. I believe it's still not time-sensitive because his guidelines would still be something around 10 years. Okay. Thank you. Thank you, counsel. We'll hear from you again in a moment. And now we'll hear from the government. Good morning. May it please the court, I'm Nathan Wren, and I represent the government on this appeal. And I also represent the government in the district court. The designation orders at issue in this case are consistent with long-standing practice, both in this court and in other federal courts around the country. They're fully consistent with the statute and with the relevant constitutional provisions. And the appellant in this case is seeking an unprecedented change in the long-standing federal practice that would upset any number of cases pending in this circuit. I'll focus in particular on the argument raised on oral argument, say that somehow these orders in particular are unusual or unprecedented. That's just not the case. Judges in this circuit have been sitting pursuant to very similar designation orders for decades. I don't understand your adversary to be arguing that they're unprecedented. I understand her to be arguing that they're illegal. Well, she mentioned that they were unusual in some way. Are they unusual elsewhere, though? Because we do sometimes forget that we are not the end-all and be-all. So in other circuits, is this common? It is common, Your Honor. We actually have Code No. 6 in our brief on pages 32 and 33, where we cite a number of cases in which circuit judges continue to sit in the district court after being designated to the circuit. I actually clerked on the Seventh Circuit, and I know it's common. One of the cases we cite in our papers is Judge Hamilton after he was appointed to the Seventh Circuit and continued to sit by designation for a period of time. We cite Ninth Circuit cases, Fourth Circuit cases, in which district judges have continued to sit by designation. So I don't think it's unusual across the circuits. I don't know if it's more common in the Second Circuit than the other circuits, but it's certainly a common practice throughout the federal courts. But focusing on the legal issues, Your Honor, the statute at issue here clearly authorizes the chief judge of the circuit to appoint Judge Olin to sit by designation in the district court, which is exactly what the judge did here. There's nothing in the statute that requires any sort of binding. That's a completely inserted term in the statute by the felon here that doesn't appear. There's never been any precedent suggesting that any binding is necessary. And to the extent this court were to consider whether the public interest warranted the designation here, all of the reasons that Your Honors have suggested are fully appropriate, and it was well within Chief Judge Olin's discretion to allow Judge Olin to continue to sit in this case to which he was originally assigned. One important point about this case in particular that makes it somewhat different from the Bradley case that was argued last week, this 2255 motion was actually already pending when Judge Sullivan was a district judge. So even the argument that we just heard about Bradley, Kelly, and a new matter doesn't apply here. This was a pending motion before Judge Sullivan when he was a district judge, and all he did was resolve that motion after he became a circuit judge. Is that the condition that prevailed in the case that was heard last week? In Bradley, it was a term of supervised release that Judge Sullivan had imposed as a district judge, but the violation of supervised release arose in 2023 when he was sitting by designation pursuant to the same designation or provision that she did. Even though the statute doesn't require an articulation of the public interest, as counsel points out, this sort of form order that's created and used for these appointments, is there some point at which the form order can make us concerned that there wasn't a thoughtful process, given that it looks like it's the form order that would be used to appoint Judge Villardo to sit with us on the circuit instead of appointing a circuit judge to sit on the district? Even if there's not a requirement of an articulation of the public interest, should the relatively uncareful way that this appears to have been drafted raise concerns about whether that thought process was engaged in? I don't think there's any reason to impugn the process by which the designation is referred in this case, and I think that the practice in the circuit helps to inform that. As you pointed out earlier, it makes every sense in the world that the district judge who originally was sitting in a case and was familiar with the case, in this case, Judge Sullivan actually provided a trial in this matter. And so his resolution of issues that were raised in the habeas appeals was deeply informed by his experience with the trial, as you can see in the sentencing transcript of this case, the second sentencing transcript from 2023, where he referred to having observed the witnesses testifying at trial. And so it makes every sense in the world for the chief judge of the circuit to determine that it's appropriate to designate judges after they've ascended to the circuit to continue to adjudicate cases to which they were previously assigned until that unfinished business is completed. And that provides a defined end point. We don't know when that end point will actually come, but we know that there is a defined end point, and that's the best reading of the word temporary in the statute. But in terms of public interest, we are and I was articulating some reasons there might be an interest and you've articulated some reasons, but we're doing that. How does this order tell us that that's what the order is contemplating, that the order is considering the public interest? So the order simply says that the chief judge has determined that it is in the public interest and the business of the courts requires. It says the business of the court requires the designation and assignment. What it says is it requires a circuit judge to sit here. It says a circuit judge to sit upon the court. We usually refer to ourselves as the court.  And then it says I do by hereby designate Judge Sullivan to sit on the SDNY. It doesn't say what the public interest in that is, right? This order does not articulate the public interest. But as we've identified in our brief, when Congress wants to require judges to make specific findings, Congress is fully capable of doing that. I understand, but I'm trying to figure out how this, which talks about the needs of the circuit court, the business of the U.S. Court of Appeals for the Second Circuit requires. That we require, we as a court require, it's in our interest, it's in the public interest because the Second Circuit needs it for Judge Sullivan to sit on the Southern District. Yeah, the way that I would read that, Your Honor, is that the chief judge of the circuit is also responsible for overseeing the business of the district courts that sit within the circuit. And that's why this particular power to assign circuit judges to sit by designation of the district court is assigned to the chief judge of the circuit. And so the way I would read Judge Julien's order here is to say that the business of the Second Circuit is furthered by having Judge Sullivan continue to sit and adjudicate the unfinished business in cases in which he was assigned when he was in the district court. And I think we can read this word in light of the longstanding practice and the fact that orders containing essentially this language date to at least 1926, which is the Donegan v. Dyson case that we cited earlier, where the Supreme Court upheld the designation with the same unfinished business language that we see here. Congress actually passed the designation statute at issue here in 1948, presumably with awareness of the way that the Supreme Court had affirmed orders having this language. And if you look at the legislative history of that, to the extent there's any uncertainty about what the word temporary means, it's quite clear, as we cited earlier, abundantly clear from legislative history, that Congress intended to create discretion in the chief judge of the circuit to assign circuit judges to sit in the district. And the actual quote from the legislative history is, without limitation of time. So the idea that the word temporary was meant to incorporate some specific time limit is just not consistent with the legislative history. And the better way to read that is that there must be a defined end point, as there is here, the completion of unfinished business, which is the longstanding language that courts have used. But there doesn't have to be some time in which, oh, time's up, now we have to reassign the case, notwithstanding the extensive experience of defense. You'd agree that it would probably make sense for the court to create two orders, right? One for, like the one that Judge Livingston used here, to appoint me to sit by designation on the Second Circuit. And then an entirely different order with some different language, especially at the beginning, to appoint a circuit judge to continue to sit as a district judge, right? Your Honor, I think these orders are perfectly consistent with the statute. I think another order along the lines that you've described would also be perfectly consistent with the statute and perfectly appropriate. I think that the one thing we see is that this practice has persisted for over a century, that the very few times where any challenges to sitting by designation have been raised in any court, they've been quickly rejected as not warranted by either those designation statutes that were being challenged or by the constitutional language that the Apollo Bill relies on. So there's really no reason to upset that practice. But certainly an order along the lines you described would also be perfectly logical as well. I'll just turn briefly to the sentencing issue. The sentence imposed here was based on the cross-reference to the murder guidelines, and Judge Sullivan was well within his discretion, and certainly did not commit a clear error, to find that the murder in this case was either aided and abetted by Mr. Gonzales, or was in furtherance of the jointly undertaken criminal activity and foreseeable future. He didn't base his decision solely on the jury verdict, right? He did not. He specifically says at the sentencing transcript, the jury found, and that's an important consideration for me, but I also independently find quite a preponderance, having sat at the trial, that the application for this cross-reference is met, and so that's well within his discretion of mine, and there's no clear error. Unless there are further questions from the rest of the committee. All right. Thank you, counsel. Ms. Baumgartel, we'll hear from you again for two minutes. Thank you. Just to touch on how common designations to the district court are, I just looked back at the government's footnote. I believe they collected five cases over the course of 30 years of judges designated to the district court. The Federal Judicial Center keeps track of the number of cases that are decided by visiting judges, and so there are some statistics in one of the larger articles that we cite, but basically, during modern times, there have been something like less than 1% of district court cases that have been presided over by a visiting judge, and so designations or visiting judges to the district court are statistically exceedingly rare. With respect to this idea that it's in the public interest just to have judges continue on their cases, as I agree, there's some need to have a transitional period, but once you go beyond that, the court should consider that sentences and other judgments are imposed by authority of a court. They're not imposed by the authority of an individual judge, and it's contrary to the concept of the rule of law to suggest that an individual judge has invested interest in a sentence that he previously imposed. Judge Goldman did say things that he thought had happened at the trial and used that as the basis for his sentencing, but part of what we argue in this brief is he was wrong in some of the things that he said. Why are you thinking in terms of the judge's interest in continuing with the case rather than the manifest public interest in having continuity of judicial management of a particular case? Our argument is that at some point, there ceases to be a benefit to that, and the point is at six years, and so there's no public benefit. And when does it age out? Much sooner than six years. There may be hard, line-drawing cases, but this is not one of them. There was no public benefit to Judge Goldman continuing on this case, and just with respect, a large part of his argument for the sentencing enhancement was that the jury had found this. The jury had not, in fact, found that. You can read the transcript of the jury instructions of the government's argument. The 924J count was charged as essentially strict liability with respect to the murder, and so the jury was not required to find that Mr. Gonzalez intended the murder or that he even intended the murder. Nonetheless, the judge relied on his faulty memory about what the jury found to impose this significant sentencing enhancement on Mr. Gonzalez. But did the judge have to rely on what the jury found? No, but that was a huge part of his reasoning, and so he does ultimately also make the independent finding which was challenging. But as the government just discussed, and as Your Honor mentioned, a large part of his reasoning was his mistaken impression that that was what the jury had found. And, in fact, the government argued that at every step of the way. Thank you. Thank you, counsel. Thank you both.